IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY E. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 5158 |
| ) | |
| MORGAN STANLEY, DISCOVER FINANCIAL ) | |
| SERVICES LLC, KPMG, ROCCO DEGRASSE, ) | |
| TONY DELUCA, KAREN DOLLMEYER, ) | |
| CAROLE HOFFMAN, BERNICE JEE, ) | |
| KELLY MCNAMARA-CORLEY, ) | |
| DAVID OPPENHEIM, KERRY PIERCY, ) | |
| DAVID SUTTER, VESELA ZLATEVA ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

*Pro se* plaintiff Beverly Robinson ("Robinson") brings this lawsuit against Morgan Stanley, Discover Financial Services, LLC, Tony DeLuca, Karen Dollmeyer, Carole Hoffman, Bernice Jee, Kelly McNamara-Corley, David Oppenheim, Kerry Piercy, David Sutter, and Vesela Zlateva ("the Morgan Stanley Defendants"), KPMG LLP ("KPMG") and Rocco J. deGrasse ("deGrasse"). The Morgan Stanley Defendants are Robinson's former employer and the various supervisors, managers, and representatives who interacted with Robinson in regards to specific events that occurred during her employment. KPMG and deGrasse are external auditors who participated in the investigation of concerns raised by Robinson to her employer in 2004, before her termination.

On September 24, 2007, this court ruled on two motions to dismiss claims set forth by

1

Robinson in her original Complaint. Among other holdings, the court dismissed Robinson's defamation and fraud claims in their entirety without prejudice to refiling in accordance with the court's order. The court also denied the Morgan Stanley Defendant's motion to dismiss Robinson's breach of contract claim, finding that, although certain disclaimer language in the Employee Handbook made clear that oral assurances of continued employment would not create an enforceable contractual right, written assurances of continued employment made by an authorized officer of the company could still create such a right. Robinson has since filed an eight-count First Amended Complaint that is the subject of two motions now pending before the court: The Morgan Stanley Defendants' Motion to Dismiss Counts III, V, and VIII of Plaintiff's First Amended Complaint, (Dkt. No. 57), and KPMG and deGrasse's Motion to Dismiss, (Dkt. No. 60). The court has original subject-matter jurisdiction over Robinson's FMLA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Robinson's state law claims pursuant to 28 U.S.C. § 1367.

For the reasons stated below, both the Morgan Stanley Defendants' Motion to Dismiss and KPMG and deGrasse's Motion to Dismiss are granted in their entirety.

## BACKGROUND

For purposes of addressing the pending 12(b)(6) motions, the court accepts as true the following facts, as set forth in the First Amended Complaint:

Plaintiff Beverly Robinson ("Robinson") worked in the Internal Audit Department of Morgan Stanley from October 2, 2000 until her termination on August 24, 2004. Throughout her employment, Robinson was located in the Discover Financial Services ("DFS") headquarters building in Riverwoods, Illinois. Robinson began her career at Morgan Stanley/DFS as a Senior

2

Auditor, and was promoted to Electronic Data Processing (EDP) Audit Supervisor in August, 2001. In January 2002, after returning from almost two months of approved medical leave for major surgery, Robinson was demoted back to the position of Senior Auditor.

In October 2003, Robinson informed David Sutter ("Sutter"), Vice President of the Internal Audit Department, that she wanted to raise some concerns to the Company Audit Director, who was Sutter's boss. Shortly thereafter, Sutter put Robinson on a 60-day corrective action plan, citing Robinson's desire to go over his head as one of the criticisms. In December 2003, after a restructuring of Robinson's audit group, Sutter gave Robinson a "needs improvement" year-end review. The October 2003 corrective action plan was also extended for another 60 days.

On February 5, 2004, Robinson delivered a memorandum of approximately twenty-four pages (plus attachments) to the Chief Financial Officer of DFS,[1] detailing legal, regulatory, tax, accounting, auditing, and personnel concerns that Robinson had uncovered as an auditor and as a non-auditor. The following day, the CFO and Kelly McNamara-Corley ("McNamara-Corley"), head of the Law Department in Riverwoods, Illinois, informed Robinson that they were launching an investigation into the concerns Robinson had raised in her memo. At the request of the CFO and McNamara-Corley, Robinson began participating in the investigation by supplying additional information, including documents and names, relevant to the issues raised in Robinson's memo. The investigative team that was assembled to look into Robinson's concerns included David Oppenheim ("Oppenheim") from the Law Department in Riverwoods, Illinois,

---

[1] Robinson does not specifically name the CFO of Discover Financial Services in her First Amended Complaint. He appears to be an individual named "Mr. Slusarz," and thus not a named defendant in this case. (*See* 1st Am. Compl. ¶¶ 40, 132.)

Bernice Jee ("Jee") from the Human Resources Department or "CARE" area (located "somewhere other than Riverwoods, Illinois") (1st Am. Compl. ¶ 10), Carole Hoffman ("Hoffman") from the Morgan Stanley Law Department in New York, an unnamed Audit Director from New York,[2] and Rocco deGrasse ("deGrasse") from KPMG, along with other KPMG personnel. The investigation was divided into two parts: investigation of the legal, regulatory, accounting, and auditing issues, which was to be conducted by "KPMG and other people," and investigation of the personnel issues, which was to be conducted by Jee and Hoffman. (*Id.* ¶ 43.)

While the investigation was ongoing, Robinson began to be subjected to retaliation by members of the Internal Audit Department. Robinson reported this retaliation to the investigative team, who assured her that no retaliation would be tolerated. However, Robinson continued to be subjected to retaliation, as did the one or two people in the Internal Audit Department who still associated with Robinson at that time. Robinson reported the retaliation to Jee, Hoffman, and Kerry Piercy ("Piercy"), Vice President of Human Resources.

In late March 2004, "after less than one day of meeting with Ms. Jee and Ms. Hoffman to discuss the personnel issues," Jee and Hoffman tried to convince Robinson that she should leave the company and they offered to "package her out." (*Id.* ¶¶ 44, 212). Robinson reported this conversation to the CFO and McNamara-Corley, and McNamara-Corley "assured the Plaintiff she had a job in Audit." (*Id.* ¶ 45).

On May 7, 2004, Robinson was given the results of the investigation in a meeting

---

[2] This individual is likely defendant Tony DeLuca, who is described elsewhere in the First Amended Complaint as "the Company Audit Director with offices in New York." (*Id*. ¶ 12).

4

attended by herself, Oppenheim, Jee, Hoffman, and deGrasse. Robinson was told that the investigative team "did not determine any concerns in the audit area," and that they had also determined that there had been no FMLA violations or retaliation against Robinson, although the investigative team acknowledged that some of the personnel issues raised in her memo could have been handled better. (*Id.* ¶ 48). On May 17, 2004, Piercy and another member of Human Resources met with Robinson and "informed her there had been no retaliation" against Robinson or others. (*Id.* ¶ 50). No action was ever taken in response to the retaliatory conduct that Robinson continued both to experience and to report.

Shortly after the meeting with Piercy, Robinson's manager Vesela Zlateva ("Zlateva") put Robinson on a corrective action plan which was "almost identical to the action plan Mr. Sutter had issued in October 2003 and cited the same incidents." (*Id.* ¶ 51.) Piercy and Zlateva met with Robinson weekly to give Robinson updates of her performance. At these meetings, Zlateva "would read a list of complaints" about Robinson. (*Id.* ¶ 54). Upon trying to discuss, correct, or question any of the items on Zlateva's list, Robinson was accused of arguing and not accepting feedback. In mid-June 2004, the company provided Robinson with an outside coach. Nevertheless, on August 6, 2004, Robinson was given a Job-in-Jeopardy memo informing Robinson that if her performance did not improve, she would be terminated. On August 24, 2004 Robinson's employment with Morgan Stanley/DFS was terminated.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally needs to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Complaints must include "enough detail to illuminate the nature of the claim and allow defendants to respond." *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007). In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1965).

## ANALYSIS

A.  Defamation (Count 3)

In Count 3 of her First Amended Complaint, Robinson alleges that Morgan Stanley, DFS, Piercy, Sutter, Zlateva and HR Representative Karen Dollmeyer ("Dollmeyer") are liable for the "continuing tort of defamation." (1st Am. Compl. at 12.) This claim was also set forth in Robinson's original Complaint.

In its Memorandum Opinion and Order of September 24, 2007, the court held that the vague allegations of Robinson's original defamation claim were "insufficient to put the named defendants on notice of the nature of Robinson's claim." (Dkt. No. 47 at 15.) The court also noted that it was unable to ascertain at that time whether Robinson's defamation claim was barred by the applicable one-year statute of limitations due to the "vague and unspecific" nature of Robinson's claim and suggested that "[i]n considering whether to replead her defamation

6

claim, Robinson . . . remain cognizant" of this cut-off date. (*Id.*; *see* 735 Ill. Comp. Stat. 5/13-201.) Now that Robinson has realleged her defamation claim with more specificity, it is apparent that the one-year statute of limitations bars recovery on a significant portion of Robinson's claim. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 802 (7th Cir. 2008) (although the statute of limitations is an affirmative defense, a claim may be dismissed on this basis if the allegations of the complaint show that relief is barred by the applicable statute).

The initial Complaint in this case was filed in state court on August 24, 2006. To be considered timely, Robinson's defamation claim must be based on statements that were made on or after August 24, 2005; Robinson can also base her defamation claim on earlier statements, if she did not reasonably become aware of these statements until on or after August 24, 2005. *See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet*, 334 N.E.2d 160, 164 (Ill. 1975).

Robinson's employment with Morgan Stanley/DFS was terminated on August 24, 2004. Any defamatory statements alleged to have been made during Robinson's employment or shortly after her termination are therefore barred by the one-year statute of limitations. These statements include all "false written statements in performance reviews, supporting documents and other documents for and/or concerning the Plaintiff . . . used against her in various ways up to, and in some cases including, firing the Plaintiff" (1st Am. Compl. ¶¶ 83-90); "false speculations, rumors, and other statements about the Plaintiff" that were communicated during the investigation and before Robinson's termination (*Id.* ¶¶ 95-98); and statements "imputing inability to perform the duties of her profession and want of integrity and prejudicing the Plaintiff in her profession" that were made during Robinson's employment (*Id.* ¶¶ 102-104).

7

Robinson argues that the "continuing violation" theory should apply to her defamation claim, such that the statute of limitations only "begins ticking" when an ongoing pattern of defamation has ceased. (Dkt. No. 67, Pl. Resp. Mem. at 3.) In this case, Robinson asserts that "the pattern has undoubtedly not yet ceased." (*Id.*) Unlike some torts, defamation is not a cumulative harm. Rather, each distinct act of publication produces a separate cause of action. *See Poth v. Paschen Contractors, Inc.*, No. 85 C 8499, 1987 WL 14604, at *3 (N.D. Ill. July 20, 1987); *see also Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 932-33 (N.D. Ill. 2000) (distinguishing two different incidents when plaintiff became aware of inaccurate credit reporting—one which was barred by the statute of limitations and one which was permitted). The statute of limitations on each alleged defamatory statement thus began to run when Robinson knew, or should have known, of its publication.

Robinson argues that she did not discover two of the alleged defamatory statements until 2007. One of these allegations is not actually a statement and cannot support a defamation claim. (*See* 1st Am. Compl. ¶ 93 ("Mr. McNeill and another member of the Internal Audit staff were asking Ms. Davis after the investigation 'why is she still here?'" in reference to the Plaintiff, raising the question of what the two must have been told about the Plaintiff and her involvement in the investigation.").) The second statement, however, sufficiently explains what was said ("statements indicating the Plaintiff did not suffer from severe fragrance allergies"), who the speaker was ("Ms. Khosravani and other members of the Internal Audit department"), and when the statement was made ("shortly after Mr. Sutter sent an email to the Riverwoods members of the Internal Audit department asking them to be considerate of employees with allergies to perfumes and other fragrances on August 19, 2004"), such that the Morgan Stanley

8

Defendants are in a position to file an appropriate response. (*Id.* ¶ 91.) Likewise, the statement that "[m]embers of HR and possibly the Law department were falsely claiming in September or October of 2005 that the Plaintiff had lost the Sarbanes-Oxley case," (*Id.* ¶ 92), is within the appropriate time frame and sufficiently pleads the particulars of the false statement.

The problem with both of these statements, however, is that they constitute defamation *per quod*, and Robinson has set forth no allegations of special damages in relation to their publication. Although a plaintiff need not plead special damages for claims that are based on defamation *per se*, that claim is limited to statements regarding "(1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). The statements that Robinson did not suffer from severe fragrance allergies and that she lost her Sarbanes-Oxley case, even if untrue, do not fit any of these categories and are not inherently damaging. In other words, they "requir[e] proof of extrinsic facts to show their defamatory meaning." *Id.* To allege an action for defamation *per quod* in federal court, Robinson must plead special damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g). *Id.* at 924, 927. This means that Robinson must plead and prove "actual damage to [her] reputation and pecuniary loss resulting from the defamatory statement." *Dornhecker*, 99 F. Supp. 2d at 933 (citing *Bryson v. News Am. Publ'ns*, 672 N.E.2d 1207, 1221 (Ill. 1996)). Robinson has alleged that these false statements "caused the Plaintiff significant stress, emotional trauma, [and] damage to her reputation." (1st Am. Compl. ¶ 83.) These general allegations are insufficient to satisfy the special pleading requirements of Illinois law

9

pertaining to claims of defamation *per quod*. *See Heerey v. Berke*, 544 N.E.2d 1037, 1041 (Ill. App. Ct. 1st Dist. 1989) ("General allegations as to damages, such as, damage to one's health, emotional distress, damage to reputation and economic loss, are insufficient to state a cause of action for defamation *per quod*.") (citing *Richardson v. Dunbar*, 419 N.E.2d 1205, 1210 (Ill. App. Ct. 3d Dist. 1981) and *Bruck v. Cincotta*, 371 N.E.2d 874, 879-80 (Ill. App. Ct. 1st Dist. 1977)). Because Robinson has failed to adequately allege special damages associated with these statements, they cannot form the basis of Robinson's defamation claim.

Some of Robinson's allegations are tied to no particular date, thus skirting the statute of limitations issue. (1st Am. Compl. ¶¶ 105, 106.) However, each of these statements is too vague to permit a response. (*See id.* ¶¶ 100, 105-106 (describing "statements imputing inability to perform the duties of her profession [including] '[c]laims the Plaintiff did not maintain proper audit confidentiality, an essential and required trait of an auditor' and '[o]ther various claims and/or implications the Plaintiff was not a good auditor'").) Because Robinson does not describe the speaker, the listener, or the timing of these statements, the Morgan Stanley Defendants are not in a position to properly file an answer in response to these allegations.

Robinson also alleges that the Morgan Stanley Defendants are liable for "expos[ing] the Plaintiff to further defamation through the continued existence of documents making false statements about her [with] a high likelihood of being further published, whether intentionally or by accident." (*Id.* ¶ 99.) Defamation requires publication of a false statement. *See Krasinski v. United Parcel Service, Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). The possibility of future publication is speculative and insufficient to state a cause of action for defamation.

Finally, Robinson has alleged that she received a "termination document" for the first time "during the document exchange prior to the Sarbanes-Oxley hearing in August through September 2005." (*Id.* ¶ 101.) The Morgan Stanley Defendants "have not moved to dismiss [this] allegation[ ] on statute of limitations grounds," (Dkt. No. 68, Morgan Stanley Def. Reply at 6), although it is likely that Robinson discovered the document's existence before August 24, 2005.[3] *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166 (7th Cir. 1997) ("Statutes of limitations are ordinarily for the protection of defendants and so can be waived or forfeited by them.") The termination document—which Robinson alleges Zlateva falsely claimed to have given Robinson on the day she was fired—stated that Robinson needed to "[e]xercise good judgment on managing the scope of audits." (1st Am. Compl. ¶ 101.) The Morgan Stanley Defendants argue this document is subject to a qualified privilege and the court agrees. When a plaintiff has alleged facts demonstrating that a statement was made in the employment context, the plaintiff must also plead that the statement was made "with knowledge of its falsity or in reckless disregard for its truth or falsity." *Radimecky v. Mercy Health Care & Rehab. Center*, No. 00 C 2889, 2000 WL 1644510, at *7 (N.D. Ill. Oct. 26, 2000) (citing *Krasinski*, 530 N.E.2d at 471). Such allegations can be made generally. Fed. R. Civ. P. 9(b); *see Kapetanovic v. Stephen J. Cannell Prods., Inc.*, No. 97 C 2224, 1998 WL 474141, at *3 (N.D. Ill. Aug. 6, 1998). In this case, Robinson has alleged that the documents *actually* used to support her termination included "knowing[ ] and intentional[ ] . . . false written statements," (1st Am. Compl. ¶ 83), but she does not assert that the statements in the termination document, which was

---

[3] The 11-day hearing took place in August and September 2005, (Dkt. No. 58, Morgan Stanley Def. Mem. at 2 n.2), but the parties do not inform the court of the actual dates of the hearing, nor does Robinson specify when the "prior" document exchange took place.

11

produced at a later point in time, were made with actual malice. Robinson also fails to allege that this statement was published to a third party, instead alleging only that she "received it during the document exchange prior to the Sarbanes-Oxley hearing in August through September 2005." (*Id.* ¶ 101.) To the extent this statement is alleged to have been published for the first time in relation to the Sarbanes-Oxley hearing, it is further protected by the absolute privilege for communications related to a judicial proceeding. *Malevitis v. Friedman*, 753 N.E.2d 404, 406-07 (Ill. App. Ct. 2001). For all of these reasons, the allegations in paragraph 101 of Robinson's First Amended Complaint fail to sufficiently set forth a claim for defamation.

Because Robinson has only alleged statements that are vague, made outside the applicable statute of limitations period, unconnected to special damages, related to the possibility of future publication, or privileged, her defamation claim cannot stand on the allegations of her First Amended Complaint. Because this is Robinson's second attempt to adequately set forth a claim for defamation, the court dismisses Robinson's defamation claim with prejudice.

B.     Fraud (Count 5)[4]

In Count 5 of her First Amended Complaint, Robinson generally alleges that the named defendants misrepresented to her certain aspects of the ongoing investigation. Specifically, Robinson alleges that Jee, Hoffman, Oppenheim, McNamara-Corley, DeLuca, and deGrasse at various times assured her that "the investigation of the issues and the Plaintiff's involvement would be kept confidential" (1st Am. Compl. ¶¶ 132, 134-135); that all documents and items

---

[4] Robinson's First Amended Complaint was filed after the court dismissed her intentional infliction of emotional distress ("IIED") claim with prejudice, but before the court had an opportunity to rule on Robinson's motion to reconsider the court's dismissal. The court later denied Robinson's motion to reconsider, thus mooting the IIED claim alleged in Robinson's First Amended Complaint as Count 4. To avoid confusion, the court continues to refer to Robinson's remaining claims as originally set forth in the First Amended Complaint, without renumbering them.

taken by the investigation team would be returned to Robinson (*Id.* ¶¶ 149, 154-156); that "they were conducting a legitimate investigation into legal, regulatory, accounting, tax, and employment issues she raised to management in good faith" (*Id.* ¶¶ 43, 127, 132, 142); and that "no retaliation would be tolerated" (*Id.* at ¶¶ 43, 132, 133, 163, 177). On the whole, Robinson alleges that these promises and assurances were false. (*Id*. ¶¶ 136, 140, 144, 153, 157, 164, 173-174, 178.)

To state a valid cause of action for common law fraud, a plaintiff must ultimately prove "(1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's damages resulting from reliance on the statement." *Suburban 1, Inc. v. GHS Mortgage, LLC*, 833 N.E.2d 18, 21 (Ill. App. Ct. 2d Dist. 2005). Because both motions to dismiss involve similar arguments on this point, the court addresses them together.

The Morgan Stanley Defendants and KPMG/deGrasse each argue that Robinson has alleged no misrepresentation of material fact, instead alleging only promises to perform future acts. Under Illinois law, "a promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a false representation as will constitute fraud." *Roda v. Berko*, 81 N.E.2d 912, 915 (Ill. 1948). In other words, to support a claim for fraud, a plaintiff must demonstrate through evidence "other than the broken promise" that a fraud was intended. *Id.*; *see Willis v. Atkins*, 106 N.E.2d 370, 378 (Ill. 1952) (noting "there is much more in this record than mere breach of promise"). In this case, the only fraudulent statements alleged by Robinson involve promises and assurances made by the named defendants to perform specific

13

actions in the future. Robinson argues in her briefs to the court that these promises not only included misrepresentations about what the defendants *would* do, but also what they "were doing" and "had done." (Dkt. No. 66, Pl. Resp. Mem. at 2; Dkt. No. 67, Pl. Resp. Mem. at 6-7.) Robinson's argument, however, does not square with the language of the First Amended Complaint, which generally describes the defendants' various assurances that the investigation "would be" carried out in a particular fashion. To the extent Robinson's fraud claim rests on promises to perform future acts, it fails as a matter of law.

Robinson's fraud claim also fails to allege a factual scenario suggesting a plausible right to relief. Contrary to the defendants' argument on this point, the court finds that Robinson has generally alleged reliance on the defendants' statements, such that she would not have continued her participation in the investigation but for their assurances.[5] (1st Am. Compl. ¶¶ 137, 146, 150, 154, 156, 179; *see also Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006) ("If the judge can see what the *pro se* litigant is driving at, that is enough.").) Robinson also alleges that her participation in the investigation caused her harm in the form of unwarranted gossip, criticism, and eventually the termination of her employment, because Robinson was unable to explain to others the reason for her many absences and frequent trips to the Law Department, and she did not have the necessary documents to complete her work in the face of upcoming

---

[5] The court recognizes that Robinson's reliance on the defendants' assurances of confidentiality may not have been reasonable under the circumstances. (*See* 1st Am. Compl. ¶ 136 (as early as February 10, 2004, Robinson knew that one of the subjects of the investigation had been told about the investigation); *see id.* (Robinson was presumably aware that members of the Internal Audit Department could see her going to and from the investigation meetings, "often carrying armloads of documents the investigation team had requested.").) The court need not decide this issue but assumes for purposes of its holding that Robinson's reliance was reasonable.

14

deadlines. (1st Am. Compl. ¶¶ 137, 147, 158-159.) Missing from Robinson's fraud claim, however, are any allegations to support a reasonable inference that the defendants knowingly made false statements with the intent that Robinson would act in reliance on them. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) ("the critical element is whether the facts alleged in the Amended Complaint, and the reasonable inferences taken from those facts, permit the conclusion that PwC's allegedly false statements in 1998 and 1999 were made with the intent to induce Tricontinental not to seek rescission."). Nowhere in her First Amended Complaint does Robinson allege that the defendants knew their statements to be untrue at the time they were made.

It is uncontested that Robinson's memo to the CFO of Discover Financial Services, with whom Robinson had "a long-term friendly and trusting relationship," (1st. Am. Compl. ¶ 39), was the impetus for the defendants' investigation. Although the alleged misrepresentations may have induced Robinson to continue her participation in the investigation—keeping the investigation confidential, turning over original documents to the investigative team, refraining from making her own record of the investigation, and opening herself up to harassment, retaliation, and criticism—Robinson does not allege that the defendants gained anything from her involvement other than information that would have been pertinent to a *bona fide* investigation of the matters raised in her memo. (*See* 1st Am. Compl. ¶ 41.) In other words, there is nothing in the First Amended Complaint to indicate that the defendants had any motive to intentionally induce Robinson's ongoing participation in proceedings they knew to be a sham. This is especially true of KPMG personnel, with whom Robinson does not allege any prior relationship.

At the motion to dismiss stage, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. "[H]ow many facts are enough will depend on the type of case." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). Here, Robinson has alleged that the Morgan Stanley Defendants brought in outside personnel from KPMG for the express purpose of investigating Robinson's concerns. To support her fraud claim, Robinson must allege some reason why nine defendants from two different companies would intentionally misrepresent the nature of their investigation to her. On the facts alleged in the First Amended Complaint, this court finds that Robinson has failed to "nudge[ ] [her] claims across the line from conceivable to plausible." *Twombly*, 127 S. Ct. at 1974. Because this is Robinson's second attempt to adequately state a claim for fraud, the court dismisses Count 5 with prejudice.

C.     Breach of Contract (Count 8)

In her breach of contract claim, brought against Morgan Stanley, DFS, McNamara-Corley, Sutter, and Zlateva, Robinson incorporates all preceding paragraphs of the First Amended Complaint and states, in full:

> 212.   Defendants in whole or part discharged the Plaintiff contrary to assurance in or around late March 2004 of continued employment by the head of the Law Department for DFS [McNamara-Corley], which company was headquartered in the building, the target of multiple internal audits performed by the Plaintiff, and involved in the Investigation. The head of the Law Department for DFS was involved with, and had portrayed herself to the Plaintiff as the person, or one of the people, responsibility [sic] for launching and/or heading the Investigation.
>
> 213.   Defendants did not uphold their promise and obligation repeatedly given to the Plaintiff that retaliation would not be tolerated.

(1st Am. Compl. ¶¶ 212-213.) The Morgan Stanley Defendants argue that Robinson's breach of

16

contract claim must be dismissed because it is based on oral assurances of continued employment, which the court found to be unenforceable in its Memorandum Opinion and Order of September 24, 2007. Specifically, Robinson has alleged in her First Amended Complaint:

> 185. Later on March 22, 2004, the Plaintiff *spoke by conference call* to Ms. McNamara-Corley and Mr. Slusarz, who claimed they knew nothing about the attempted pay-off. On March 22, 2004, Ms. McNamara-Corley assured the Plaintiff she had a job in Internal Audit, then asked the Plaintiff, "you know you have a job in audit, right?"

(1st Am. Compl. ¶ 185 (emphasis added).) In its September 24, 2007 Memorandum Opinion and Order, the court specifically found that the disclaimer language in the Employee Handbook precluded oral agreements of this sort.

In her Response, Robinson makes clear that her breach of contract claim is based on the premise that the named defendants retaliated against Robinson for her participation in the investigation by terminating her employment, contrary to Section 806 of the Sarbanes-Oxley Act of 2002 and Illinois public policy. *See* 18 U.S.C. § 1514A. However, neither Illinois public policy nor the Sarbanes-Oxley Act of 2002 creates a *contractual* right to continued employment. Rather, as set forth by Robinson, Illinois recognizes "an exception to 'at-will' [employment] by allowing employees who were wrongfully terminated in violation of the public policy to file a retaliatory discharge suit." (Dkt. No. 67, Pl. Resp. Mem. at 9.) Robinson has alleged just such a claim in Count 1 of her First Amended Complaint. Because Robinson's breach of contract claim is not based on any enforceable contractual right, it is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, both the Morgan Stanley Defendants' Motion to Dismiss and KPMG and deGrasse's Motion to Dismiss are granted in their entirety. Counts III, V, and VIII

17

are dismissed with prejudice and defendants KPMG and deGrasse are dismissed as defendants in this lawsuit.

ENTER:

/s/ James F. Holderman
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 18, 2008