IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY E. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 5158 |
| | ) | |
| v. | ) | Chief Judge Holderman |
| | ) | |
| MORGAN STANLEY, et al., | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Beverly Robinson has issued a subpoena for the deposition of Rocco deGrasse, an outside consultant from KMPG. Morgan Stanley, Ms. Robinson's former employer, engaged the firm to aid with their internal investigation of Ms. Robinson's charges of certain irregularities she claimed to have discovered during an audit. KMPG and Mr. deGrasse were originally named as defendants in Ms. Robinson's lawsuit; they have since been dismissed with prejudice. Ms. Robinson has four claims left in her suit against Morgan Stanley and the remaining defendants: one for retaliatory discharge, one for alleged violations of the Illinois Whistleblower Act, one for alleged violations of the Family and Medical Leave Act, and one for alleged violations of the Illinois Personnel Review Act. Discovery has been endless and acrimonious. Ms. Robinson has been indefatigable in pursuing her oceanic discovery requests.

In connection with the events underlying Ms. Robinson's claims, Mr. deGrasse has testified twice: once in a deposition in Ms. Robinson's Sarbannes-Oxley claim against Morgan Stanley, and

once during the administrative hearing on that case.[1] Dissatisfied with whatever was revealed in those two sessions, Ms. Robinson hopes that three times will be the charm. Mr. deGrasse, however, says "enough is enough" and submits that he has provided all the information he has, that is not privileged, on this matter. Mr. deGrasse has moved to quash the subpoena and for a protective order.

Ms. Robinson seems to think there is still more information to be wrung from Mr. deGrasse. She submits that she has to be able to question Mr. deGrasse about the facts of the investigation because:

> [she] participated in protected activity which included . . . issuing her Memo; reporting issues during the Investigation that was done as a result of the . . . Memo (and in which [Mr. deGrasse] was highly involved); participating in the Investigation herself (again, and in which [Mr. deGrasse] was highly involved); and reporting retaliation during the Investigation (some of which [Mr. deGrasse] witnessed) which [she] believes happened as a result of [her] reports and involvement in the Investigation.
>
> Since the Defendants have repeatedly stated they intend to claim they fired [her] for poor performance, . . . the Defendants will use this claim as a defense and, in doing so, claim they fired [her] for a legitimate non-discriminatory reason. If [Ms. Robinson ] is then required to show pretext for the . . . proffered reason . . . the Investigation will most likely reveal that: the Defendants did not actually perform a good faith investigation into the issues [she] reported [2]; the Defendants found merit to at least some of the issues [she] reported and wanted to cover them up; the Defendants already knew about at least some of the issues and that at least some of those issues were illegal, violated regulatory, IRS, and/or other requirements, and/or the Defendants wanted to discourage other would-be whistleblowers. Any of these will undoubtedly support a showing of pretext for the Defendant's claimed reason for firing [Ms. Robinson].
>
> Therefore, [Ms. Robinson] must be able to question Mr. deGrasse about the facts of the Investigation.

---

[1] The outcome was not favorable to Ms. Robinson. Nor was another recent decision in a related case.

[2] Despite exhaustive discovery in this and two related cases, Ms. Robinson has offered nothing in support of this speculation.

2

(*Pro Se Plaintiff's Response*, at 3).

But Mr. deGrasse has already testified at length about the facts of investigation. Ms. Robinson's prior counsel conducted a deposition of Mr. deGrasse on the topic of the investigation that spans a fifty-page transcript. His hearing testimony covers another forty-eight pages. At his deposition, he testified about his background and his role at KPMG in general. (*Motion by KPMG and Rocco deGrasse*, Ex. 2 (deGrasse Deposition at 4-7; 13-14). He testified, insofar as he was able to given Morgan Stanley's assertion of privilege, as to the nature of his and KPMG's role in assisting Morgan Stanley and its counsel in its investigation into the accounting and regulatory issues Ms. Robinson raised in her February 5, 2004 memorandum. (*Id.* at 20-21, 22, 37-38). He testified about the summary of findings of the investigation. (*Id.* at 23-24). He testified as to the witnesses he could recall interviewing as part of the investigation, the length of the investigation, and the identity of the individuals who conducted the investigation. (*Id.* at 33-35, 42-43). He testified that he could not recall all the witnesses involved and that "KPMG was not responsible for interviewing all the witnesses." (*Id.* at 33-34). After that, he testified again as to all these things at the administrative hearing. (*See* Ex. 3, at 1019-1067).

Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Before restricting discovery, the court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truthseeking function" in the particular case before the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Given the fact that Mr. deGrasse has

already testified on the topic at hand on two previous occasions and that Morgan Stanley has agreed that Ms. Robinson can employ those transcripts in this case, what is sought appears to involve a cumulative and/or duplicative exercise.

Furthermore, Fed.R.Civ.P. 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." The advisory committee's notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from ... undue burden...." It is a "command[ ]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir.2003); *see United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, *2 (N.D.Ill. 2005).

It is significant that Mr. deGrasse is not a party. In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *See North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005); *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 452 (D.D.C. 2002); *In re Automotive Refinishing Paint*, 229 F.R.D. 482, 495 (E.D.Pa. 2005). It is one thing to subject *parties* to the trials and tribulations of discovery – rightly regarded as "the bane of modern litigation," *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000) – but Mr. deGrasse doesn't have a horse in this race. As the First Circuit put it:

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust

4

upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998)(emphasis supplied). Mr. deGrasse has already testified twice on the matter of the investigation; a third time would not only be cumulative and duplicative, it would be an undue burden for a non-party, especially when Ms. Robinson already has all the information he has to provide.

Application of the attorney-client privilege and the work product doctrine under the circumstances of this case is covered by *Upjohn Co. v. United States*, 449 U.S. 383 (1981). There, an independent audit of a pharmaceutical corporation's foreign subsidiary uncovered payments to or for the benefit of foreign government officials in order to secure government business. The auditors informed the corporation's general counsel, who was also served as its vice president. After consulting with outside counsel and chairman of the board, it was decided that the company would conduct an internal investigation of the payments. Along the way, attorneys prepared a letter containing a questionnaire which was sent to all foreign general and area managers over the chairman's signature.

The letter noted the disclosure of possibly illegal payments to foreign government officials and emphasized that the management needed full information concerning any such payments. It informed the recipient of the investigation and included a questionnaire detailed information regarding any such payments. The managers were instructed to treat the investigation as "highly confidential" and not to discuss it with anyone other than company employees who might be helpful in providing the requested information. Responses were to be sent directly to the general counsel.

The general counsel, along with outside counsel, also interviewed the recipients of the questionnaire and 33 other officers or employees as part of the investigation. 449 U.S. at 386-87.

The corporation voluntarily submitted the report that resulted to the Securities Exchange Commission and the Internal Revenue Service, disclosing the payments that were made. The IRS commenced its own investigation and subpoenaed all the files relevant to the corporate investigation, including the questionnaires and memoranda or notes on the interviews. The corporation refused to comply, citing the attorney-client privilege and the work product doctrine. 449 U.S. at 388. The Supreme Court ruled that the materials were, indeed, protected by the attorney-client privilege.

The Court explained that "[t]he communications at issue were made by [corporate] employees to counsel for [the corporation] acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." 449 U.S. at 394. The point of the investigation was to put counsel – corporate and outside – in a position to provide legal advice to the company regarding the payments. *Id.* It didn't matter whether the employees providing the information were management or not. "Information, not available from upper-echelon management, was needed to supply a basis for legal advice concerning compliance with . . . laws . . . regulations . . . and potential litigation . . . .The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.* As for the work-product doctrine, the government conceded – "wisely", said the Court – that it applied to the memoranda and notes regarding the interviews. 449 U.S. at 397.

Here, Mr. deGrasse was in the mix, so to speak, in terms of both attorney-client and work product privilege. He was an outside consultant retained specifically for this investigation, which

was prompted by Ms. Robinson's charges of irregularities that purportedly violated the law, and her complaints that she was retaliated against in violation of the Family and medical Leave Act. While the presence of a third party will, as a general rule, defeat a claim of attorney-client privilege, there is an exception to the rule when that third party is present to assist the attorney in rendering legal services. *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007); *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997); *see also* 8 Wigmore, Evidence § 2311 ("One of the circumstances by which it is commonly apparent that the communication is not confidential is the *presence of a third person* who is not the agent of either client or attorney."). Similarly, the work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case. *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007)(*citing United States v. Nobles*, 422 U.S. 225, 238-39 (1975)). There is no dispute that Mr. deGrasse and KMPG were brought in by Morgan Stanley's in-house counsel for the purpose of conducting an investigation that would assist counsel in providing informed legal advice. And Mr. deGrasse was certainly aware of the confidentiality and purpose of his task; it's not as though he's a neophyte, he is a former Assistant United States Attorney and a partner in a law firm.

But Ms. Robinson insists she only wants to know the facts, and she says those aren't protected by any privilege. In *Upjohn*, the Supreme Court tackled the distinction, finding that "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ." The Court thought the explanation Judge Kirkpatrick provided in *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F.Supp. 830 (E.D.Pa. 1962) illuminating:

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

205 F.Supp. at 831 (*quoted in Upjohn,* 449 U.S. at 395-396).

The distinction made by Judge Kirkpatrick exists in this case. The "facts" Ms. Robinson seeks to discover *from Mr. deGrasse are* contained in the privileged communications to Mr. deGrasse made to him or his agents by the Morgan Stanley employees who were interviewed. The reality is there simply is no "relevant fact within his knowledge" that he has apart from what he was told, and those communications are privileged. Ms. Robinson, therefore, cannot rely on the distinction between facts within a person's knowledge and the privileged communications themselves.

No doubt, it would be easier for Ms. Robinson to get the information she desires from Mr. deGrasse rather than deposing those witnesses with whom he spoke and who are the individuals who actually have the "relevant facts within [their] knowledge." But convenience does not trump either the attorney/client or work-product privileges.[3] If Ms. Robinson wanted to know the "relevant facts within [the] knowledge" of the employees who were interviewed during the confidential internal investigation she should have deposed them. *Upjohn,* 449 U.S. at 396.

---

[3] Questions of expedition and efficiency are never enough to warrant sacrificing important public or private interests. *See e.g., United States v. Walters,* 913 F.2d 388, 393 (7th Cir. 1990)(judicial efficiency does not warrant sacrificing a defendant's right to a fair trial); *Gavino v. MacMahon,* 499 F.2d 1191, 1196 (2d Cir. 1974)("To sacrifice a fair trial to the interest of expedition would surely undermine the true administration of justice."); *Gjeci v. Gonzales,* 451 F.3d 416, 422 (7th Cir. 2006)("[A]n unyielding insistence on expeditiousness may, in some circumstances, violate an alien's rights.").

In all cases there comes a time when discovery must end. "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055 at *2 (N.D.Ill.1994). *See also Sommerfield v. City of Chicago*, 613 F.Supp.2d 1004, 1020 (N.D.Ill. 2009).

Ms. Robinson has had more than ample time to take more than reasonable discovery in this case. The end has finally come and she will not be allowed to depose Mr. deGrasse again. He has testified twice, and whatever a third deposition might reveal would be cumulative, duplicative, and available in his already-provided testimony. It is simply an unreasonable burden to require a non-party like Mr. deGrasse to be subjected to a third deposition. And finally, whatever he has not divulged, he learned in his capacity as the agent of defendants' attorneys and that is privileged. Granting the motion to quash does not place the "facts" beyond Ms. Robinson's reach, as she incorrectly contends. It simply forbids her to acquire those facts by learning the communications that are protected by the attorney/client and work-product privileges. As things now stand, Ms. Robinson is "in no worse a position than had the communications" between client and attorney – or attorney's agent – "never taken place." *Upjohn*, 449 U.S. at 395.

## CONCLUSION

Mr. deGrasse's motion to quash the subpoena and for a protective order [#155] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/17/10