IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY E. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 5158 |
| | ) | |
| MORGAN STANLEY, DISCOVER FINANCIAL | ) | |
| SERVICES LLC, KAREN DOLLMEYER, | ) | |
| CAROLE HOFFMAN, BERNICE JEE, | ) | |
| KERRY PIERCY, DAVID SUTTER, | ) | |
| VESELA ZLATEVA, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Pro se plaintiff Beverly Robinson ("Robinson") brings this lawsuit against Morgan

Stanley, Discover Financial Services, LLC ("DFS"), Karen Dollmeyer, Carole Hoffman, Bernice

Jee, Kerry Piercy, David Sutter, and Vesela Zlateva (collectively "Defendants"), alleging claims

for retaliatory discharge (Count 1), violations of the Illinois Whistleblower Act, 740 ILCS

174/20 (Count 2), violations of the Illinois Personnel Record Review Act ("PRRA"), 820 ILCS

40/1, *et seq.* (Count 6), and violations of the Family and Medical Leave Act ("FMLA"), 29

U.S.C. § 2601, *et seq.* (Count 7).[1]  The court has original subject-matter jurisdiction over

Robinson's FMLA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over

---

[1] Robinson's claims for defamation (Count 3), intentional infliction of emotional distress
(Count 4), fraud (Count 5), and breach of contract (Count 8) were dismissed pursuant to earlier
court orders.  (*See* Dkt. Nos. 47, 64, 72.)

1

Robinson's state law claims pursuant to 28 U.S.C. § 1367.

Now pending before the court is "Defendants' Motion for Summary Judgment Against Plaintiff Beverly Robinson." (Dkt. No. 217.) For the reasons set forth below, Defendants' motion is granted in its entirety.

## BACKGROUND[2]

Beginning in October 2000, Robinson was employed by defendant Morgan Stanley in its Internal Audit Department, where she worked as an auditor. DFS is a wholly owned subsidiary of Morgan Stanley, and Robinson was stationed at DFS's Riverwoods, Illinois facility.

Beginning August 17, 2001, Robinson's job title was "EDP Audit Supervisor." From November 29, 2001, through January 29, 2002, Robinson took a leave of absence under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Robinson also took part-time FMLA leave in late February, 2002 through early March, 2002. When Robinson returned from her FMLA leave, she was told that her title had been changed to "Senior Associate Auditor," a change that Robinson considered to be a demotion. On February 20, 2002, Robinson was also put on a performance action plan. Robinson was put on a second performance action plan on October 23, 2003, which was later extended for 60 days until February 23, 2004.

---

[2] Robinson has filed an "Amended Motion to Strike Defendants' Motion for Summary Judgment and Related Filings" (Dkt. No. 235), arguing that Defendants failed to comply with Local Rule 56.1 and failed to present the court with certain evidence. Similarly, Defendants argue that Robinson's response to their statement of facts is "littered with irrelevant, argumentative, unsupported, conclusory and non-responsive statements." (Dkt. No. 253 ("Defs.' Resp. to Robinson's Am. Add'l Facts") at 3.) The court has reviewed the parties' concerns and has attempted to set forth only truly undisputed facts in this "background" section. Robinson's motion to strike is denied, although the court remains cognizant of Robinson's concerns and has addressed them as appropriate in the analysis that follows.

On February 5, 2004, Robinson delivered a 23-page memorandum, plus exhibits, to DFS's Chief Financial Officer, Marty Slusarz ("February 2004 Memo"), detailing "numerous regulatory, legal, audit, accounting, IRS, personnel, and other issues." (Dkt. No. 251 ("Robinson's Am. Add'l Facts") ¶ 12.) Robinson's February 2004 Memo also alleged that the Vice President of Internal Audit, David Sutter, retaliated against Robinson for taking FMLA leave and for "raising issues," by criticizing Robinson in her performance reviews and demoting Robinson to Senior Associate Auditor. An investigative team was assembled by Morgan Stanley to review the allegations set forth in Robinson's February 2004 Memo, including representatives from an outside firm, KPMG. During a close-out meeting with Robinson in May 2004, Robinson was told that Morgan Stanley had found no evidence of intentional misconduct during its investigation. Additionally, on May 7, 2004, representatives from Morgan Stanley's Legal Department and Human Resources Department met with Robinson and informed her that they had found no evidence of retaliation.

On June 1, 2004, Robinson was placed on a third performance action plan. Two months later, on August 6, 2004, Robinson was given a job-in-jeopardy memo, and Robinson's employment with Morgan Stanley was involuntarily terminated on August 24, 2004.


## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' only if the dispute's resolution might change the outcome of the suit under the governing law." *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816,

822 (7th Cir. 2010). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).

When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

<u>ANALYSIS</u>

1. <u>Retaliatory Discharge</u> (Count 1)

Under Illinois law, a plaintiff alleging retaliatory discharge must prove that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) (quoting *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988)). The tort of retaliatory discharge has been narrowly construed by Illinois courts, and does not apply to redress "private and individual grievance[s]." *Irizarry v. Ill. Cent. R.R. Co.*, 879 N.E.2d 1007, 1011-12 (Ill. App. Ct. 1st Dist. 2007) (quoting *Sutherland v. Norfolk S. Ry. Co.*, 826 N.E.2d 1021, 1027 (Ill. App. Ct. 1st Dist. 2005)). The tort may apply, however, if "the discharge is for 'whistleblowing' activities, reporting illegal or improper conduct," *id.* at 1012, or if "the employee was discharged for refusing to violate a statute." *Blount*, 904 N.E.2d at 9.

In her First Amended Complaint, Robinson has alleged various reasons for her termination under the heading of "retaliatory discharge." First and foremost, Robinson alleges that she was terminated "in retaliation for good faith reporting of certain issues," including:

4

- violations and/or potential violations of various laws; regulations; Internal Revenue Code; public acts; and accounting and auditing standards, requirements, rules, regulations, and/or other determining factors;

- employee fraud;

- bad business practices;

- failure of certain employees to fulfill their fiduciary responsibilities;

- previous retaliation against [Robinson] for reporting, or attempting to report, illegal and/or other inappropriate acts and/or issues;

- other wrongful acts committed by, or on behalf of, or against the Defendant companies;

- other wrongful acts committed by or on behalf of the Defendants against the government;

- other wrongful acts committed by or on behalf of the Defendants against the public;

- other wrongful acts committed by or on behalf of the Defendants against clients and/or customers of the company;

- violations of professional audit standards and ethics; [and]

- other issues or potential issues.

(Dkt. No. 51 ("1st Am. Compl.") ¶ 62; *see also* ¶¶ 63, 66.) Robinson also alleges that she was terminated because of her "refusal to condone and/or be a party to certain acts, violations, and/or other issues" (*id.* ¶ 64), because of her "insistence" that Defendants needed to change their internal policies and procedures to comply with applicable laws (*id.* ¶¶ 67-69), and because Robinson "exercis[ed] and/or attempt[ed] to exercise the rights given to her in the company's employee manual of an open door policy" (*id.* ¶ 77). Finally, Robinson alleges that she was terminated because of a poor work record that was falsely manufactured by Defendants (*id.* ¶ 71), and because of missed deadlines caused by Robinson's participation in the 2004

investigation and by Robinson's known perfume allergy (*id.* ¶¶ 72, 78).

A.     Collateral Estoppel

Defendants first argue that Robinson's retaliatory discharge claim is barred by the doctrine of collateral estoppel.  On November 19, 2004, Robinson filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that certain Defendants[3] violated the Sarbanes-Oxley Act of 2002 ("SOX") by terminating her employment.  After OSHA determined that the respondents to Robinson's complaint had not committed any SOX violations, Robinson requested a hearing before an Administrative Law Judge.  An Administrative Law Judge from the U.S. Department of Labor, Richard Stansell-Gamm ("ALJ"), held a 10-day hearing in August and September 2005 and, in a 127-page Initial Decision and Order issued on March 26, 2007, determined that Robinson was not terminated because of any "whistleblowing" activity protected by SOX.  (*See* Defs.' Ex. G ("ALJ's Decision").)  Rather, the ALJ found that Robinson was terminated "based on [Vesela Zlateva and Anthony DeLuca's] determinations that Ms. Robinson failed to meet work-related performance standards."  (Dkt. No. 215 ("Defs.' SMF") ¶ 121 (quoting ALJ's Decision 126).)[4]  The ALJ's Decision was affirmed by the Department of Labor's Administrative Review Board ("ARB") on January 10, 2010, and, on

_____

[3] Specifically, Robinson's complaint named Morgan Stanley, DFS, and David Sutter as respondents, along with Kelly McNamara-Corley, who was originally named as a defendant in this litigation.

[4] In her motion to strike, Robinson notes her confusion regarding the proper response to "things people wrote or said in testimony."  (Dkt. No. 235 ¶ 18.)  The question poised by Defendants' statement of fact is whether "the person claimed indeed wrote the text or said the quoted text in testimony," to use Robinson's words.  (*Id.*)  It is undisputed that the ALJ issued the ALJ's Decision on March 26, 2007, and that Defendants' Exhibit G is a correct reproduction of this decision.

December 27, 2010, the United States Court of Appeals for the Seventh Circuit denied

Robinson's petition for review of the ARB's decision. *See Robinson v. U.S. Dept. of Labor*, 406

Fed. App'x 69 (7th Cir. 2010) (unpublished). It is Defendants' position that "[t]he parties have

already litigated the exact issues at stake here . . . and application of collateral estoppel would

both conserve judicial resources and encourage reliance on adjudication by preventing

inconsistent decisions." (Dkt. No. 216 ("Defs.' Mem.") at 8.)

 "For a ruling to have collateral estoppel effect, four elements must be met: (1) the issue

sought to be precluded must be the same as that involved in the prior litigation, (2) the issue

must have been actually litigated, (3) the determination of the issue must have been essential to

the final judgment, and (4) the party against whom estoppel is invoked must be fully represented

in the prior action." *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir.

2007) (internal quotations omitted). The doctrine of collateral estoppel applies to decisions

made by an administrative agency, as long as "the original action was properly before the agency

. . . [and] the agency acted in a judicial capacity." *Meyer v. Rigdon*, 36 F.3d 1375, 1379-80 (7th

Cir. 1994); *see also Bowen v. United States*, 570 F.2d 1311, 1321 (7th Cir. 1978).

 Robinson argues that "Defendants have not shown the two cases are identical." (Dkt.

No. 249 ("Robinson's Am. Resp") ¶ 56; *see also* ¶¶ 49-50.) The appropriate question is not

whether the two *cases* are identical, but whether "the issue sought to be precluded [is] . . . the

same as that involved in the prior litigation." *H-D Mich., Inc.*, 496 F.3d at 760. The two issues

actually litigated before the ALJ, and essential to the ALJ's final judgment dismissing

Robinson's SOX case, were (1) "[w]hether Ms. Robinson engaged in a protected activity under

[SOX]," and, (2) if so, "whether that protected activity was a contributing factor in the

Respondents' decision to terminate her employment." (ALJ's Decision 4.) As the ALJ made clear, the protected activity alleged by Robinson in her SOX case was Robinson's "submission of the February 2004 memorandum." (ALJ's Decision 116.) The ALJ ultimately found that "the preponderance of the probative evidence establishes that Ms. Robinson's February 5, 2004 memorandum did <u>not</u> contribute to the end of her employment as a Morgan Stanley senior auditor." (ALJ's Decision 126 (emphasis in original).)[5]

At issue before this court is whether Robinson was discharged in retaliation for her "activities," and whether Robinson's discharge violated a clear mandate of public policy. *Blount*, 904 N.E.2d at 9. Robinson identifies two distinct categories of "activities" in responding to Defendants' motion for summary judgment: her submission of the February 2004 Memo and her reports of retaliation both before and after the submission of her February 2004 Memo. (*See* Robinson's Am. Resp. ¶¶ 15, 61-62, 64.) To the extent Robinson argues that her submission of the February 2004 Memo contributed to her termination on August 24, 2004, the court finds that this identical issue has already been litigated before the ALJ.

The court disagrees with Robinson's further assertion that she "did not have an opportunity to fully litigate her claims" and that she "was not fully represented during the DOL process." (*Id.* ¶ 56.) In part, this argument is based on Robinson's assessment that the ALJ

---

[5] Although the ALJ found that only one of the allegations contained in Robinson's February 2004 Memo was a protected SOX communication, (*see* ALJ's Decision 116-117), the ALJ's decision regarding causation did not meaningfully distinguish between the effect of this protected communication and the effect of the February 2004 Memo taken as a whole. Because it is virtually impossible to separate the effects of any specific allegation made within the memorandum from the effects of the memorandum as a whole, this court finds the ALJ's determination on this issue to have been "necessary" for purposes of the ALJ's final decision on the merits.

made numerous errors of law and procedure that were not addressed by the ARB on appeal. (*Id.* ¶¶ 29-44.) "The possibility that a prior action could result in the wrong outcome" is a danger inherent to the doctrine of collateral estoppel. *Firishchak v. Holder*, 636 F.3d 305, 312 (7th Cir. 2011). Whether "the first case was wrongly decided" is not a question properly before this court, and the concerns that Robinson raises regarding error do not preclude the application of collateral estoppel in this case. *Id.* It is undisputed that the ALJ held a 10-day hearing in August and September 2005, during which more than 100 exhibits were entered into evidence and 17 witnesses testified under oath. (Defs.' SMF ¶ 119; *see also* ALJ's Decision 5-94.) Robinson was represented by counsel throughout the duration of the 10-day hearing. Although Robinson may be disappointed by "the ALJ's failure to allow certain evidence by the Plaintiff" (Robinson's Am. Resp. ¶ 29), this court cannot say that Robinson was not fully represented in the hearing before the ALJ. The fact that Robinson proceeded *pro se* before the ARB is irrelevant.

Robinson also argues that collateral estoppel is inappropriate in her case because appellate review of the ALJ's Decision "has not been exhausted." (*Id.* ¶ 51.) It is unclear whether this argument has become moot.[6] Regardless, "the [Seventh Circuit] has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending." *Prymer v. Ogden*, 29 F.3d

---

[6] On December 27, 2010, the United States Court of Appeals for the Seventh Circuit denied Robinson's petition for review. *Robinson v. U.S. Dept. of Labor*, 406 Fed. App'x 69 (7th Cir. 2010) (unpublished). Three and one-half months later, on April 14, 2011, Robinson filed a "Notice of Filing of Petition for Writ of Certiorari." *See* Case No. 10-1587 (7th Cir.) (Dkt. No. 27). There is no further entry in appellate case number 10-1587, and neither party has apprised this court of the fate of Robinson's petition before the United States Supreme Court.

1208, 1213 n.2 (7th Cir. 1994). Because "[t]he preclusive effect of a federal-court judgment is determined by federal common law," *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008), and because this court finds the ALJ's Decision to be analogous to a "federal-court judgment," the court follows the Seventh Circuit's guidance on this point rather than the Illinois case law cited by Robinson. It is undisputed that the proceedings before the ALJ are "final" for purposes of collateral estoppel; Robinson's potentially-pending appeal of this decision before the Supreme Court is therefore irrelevant.

The court has considered Robinson's additional arguments against the application of collateral estoppel to her retaliatory discharge claim and finds them to be unpersuasive. Accordingly, under the doctrine of collateral estoppel, the court finds that Robinson is barred from relying on the submission of her February 2004 Memo as the "activity" supporting her retaliatory discharge claim.

B.    Causation

Defendants next argue "the undisputed evidence demonstrates that Ms. Robinson's poor performance—and not any alleged whistleblowing—caused her termination." (Defs.' Mem. 3-4.) In Defendants' discussion of Robinson's "alleged whistleblowing," Defendants refer to Robinson's whistleblowing activities as though they consisted of only one discrete incident: namely, Robinson's submission of her February 2004 Memo. (*See id.* at 11 (referring to a specific time period "before and after she complained"), 14 ("these well-documented performance problems arose *prior* to Ms. Robinson's alleged whistleblowing") (emphasis in original), 15 ("Ms. Robinson's job performance and conduct showed no improvement after her February 2004 memo."), 17 ("In sum, Ms. Robinson's 'complaint'—her February 2004

Memo—was book-ended by the same consistent and repeated performance deficiencies for which she received multiple warnings.").)  For the reasons set forth above, Robinson's February 2004 Memo cannot support her claim for retaliatory discharge.  On the other hand, the court finds that Defendants have adequately challenged Robinson's retaliatory discharge claim by asserting "[t]here is no genuine issue of material fact that . . . [Robinson's] employment was terminated based on chronic, well-documented performance deficiencies."  (Defs.' Mem. 11 (accompanied by more than seven pages of additional argument and extensive citation to the record).)  Once Defendants adequately challenged Robinson's allegation that she was discharged because of her protected "activities," it became Robinson's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial."  *Crawford v. Countrywide Home Loans, Inc.*, __ F.3d __, No. 10-3135, 2011 WL 2906157, at *4 (7th Cir. July 21, 2011).

Under Illinois law, Robinson ultimately bears the burden of proving that her remaining "activities"—her complaints of retaliation[7]—caused her termination.  *See Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 408 (Ill. 1998) (declining to "expand the tort of retaliatory discharge" by "reducing plaintiff's burden of proving the elements of the tort").  Robinson has made no effort to demonstrate a genuine issue for trial on this point.  Robinson's briefing before the court includes no specific information regarding when her complaints of retaliation were

---

[7] As noted in Section 1.A., Robinson has alleged that she was terminated, in part, due to her complaints of retaliation.  Specifically, Robinson alleges that she was terminated in retaliation for "good faith reporting" of "previous retaliation against the Plaintiff" and "for informing [Defendants] of her intention to file a report . . . of retaliation for whistle-blowing under the Sarbanes-Oxley Act of 2002."  (1st Am. Compl. ¶¶ 62, 66.)  It is undisputed that Robinson "reported numerous types and instances of retaliation" on various occasions both "[during] and after the investigation into the issues the Plaintiff raised in her Memo." (Robinson's Am. Add'l Facts ¶ 15.)

11

made, to whom she made these complaints, the specific subject matter of these complaints, or how these complaints factored into Defendants' termination decision. Instead, Robinson argues that Defendants' proffered reason for terminating her employment is a pretext for retaliatory discharge. As the Seventh Circuit has recently made clear, Robinson cannot prevail "merely by proving that the reasons given by [Defendants] for firing [her] were unworthy of belief." *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010).[8] Accordingly, with no evidence of causation before the court, the court finds that Robinson has failed "to come forward with *specific facts* showing that there [are] genuine issues for trial" on her retaliatory discharge claim. *Crawford*, 2011 WL 2906157, at *7 (emphasis in original). Defendants' motion for summary judgment on Count 1 is granted and judgment is entered in favor of Defendants.

2.     Illinois Whistleblower Act (Count 2)

Under the Illinois Whistleblower Act, "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. Robinson has alleged that Defendants

_____

[8] Because *Gacek* was decided after Robinson had already responded to Defendants' motion, and because Robinson would not necessarily have carried the burden of demonstrating causation under the *McDonnell Douglass* standard, the court also finds for the sake of completeness that Robinson has failed to demonstrate that Defendants' proffered reason for her termination was pretextual. "To show pretext a plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to 'cover [its] tracks.'" *McCoy v. Maytag Corp.*, 495 F.3d 515, 522-23 (7th Cir. 2007) (citations omitted). There is no evidence in the record before the court to suggest to a reasonable fact-finder that Robinson's supervisors did not actually believe Robinson's difficulties with interpersonal relationships, constructive feedback, and deadlines were serious enough to warrant termination. That Robinson was otherwise qualified for her position as a senior auditor, was sought out by others as a mentor, and was not observed being rude or unprofessional by Joe Henning (auditor), Paul McMahon (auditor), Rich Robison (DFS Vice President of Accounts Payable), or TJ Kovach (Plonka) (DFS Business Technology Department Manager) is beside the point. (*See* Robinson's Am. Resp. ¶¶ 21-23.)

"continually retaliated against the Plaintiff for her refusal to condone, conceal, and/or be a party to certain acts, violations, and/or other issues up to, and including terminating the Plaintiff in violation of Section 20 of the Act."  (1st Am. Compl. ¶ 81.)

Again, Defendants argue that the doctrine of collateral estoppel precludes Robinson from litigating this claim.  It is unclear to the court, however, that Robinson's claim in Count II necessarily depends on Robinson's February 2004 Memo for support.  The court therefore rejects Defendants' argument on this point.

Defendants next argue "it is undisputed that Ms. Robinson never 'refus[ed] to participate' in an activity that would have resulted in a violation of State or federal law."  (Defs.' Mem. 19.) In support of this argument, Defendants cite to pages 45 and 46 of Robinson's deposition, which state (in full context):

> Q.    During your employment, was there ever any time that someone asked you to do something and you refused to do it because you believed it would result in a violation of a federal or state law?
>
> A.    Cover things up, yes, absolutely.
>
> Q.    Explain what you mean.
>
> A.    I mean that there are certain things that are—that violate federal and other laws, and by not raising them to a level where they could be fixed and knowing about them, that is—by expecting me to let them be covered up and not try to do something about them, that is, I believe, doing that, yes.
>
> Q.    So what you're saying is, in your view, you were complaining that DFS or Morgan Stanley was refusing to do things that you thought should be done.
>
> A.    Not just the refusing to do them, but expecting me to be quiet about it and not report it.
>
> Q.    Okay.  My question is slightly different.  Was there any time somebody asked you to do something and you said, no, I won't do that, because I think that would be a violation of a federal law or state law or some type of rule or regulation?

13

A.      I'm not sure that I ever stated anything in that way.  First of all, you've got to be careful of not getting yourself accused of insubordination by saying, No, I will not do that.  So I don't think I would have phrased something like that.

(Defs.' Ex. C ("Robinson's Dep.") at 45:15-46:20.)  Defendants have not cited any authority suggesting that a "refusal" under Section 20 must be made explicit.  Viewing the deposition testimony in the light most favorable to Robinson, a reasonable fact-finder could conclude that Robinson did refuse to "cover things up" or "be quiet" in circumstances where Robinson believed to do so would constitute a violation of state or federal law.  The court therefore rejects Defendants' argument on this point, as well.

Finally, Defendants argue that Robinson's claim under the Illinois Whistleblower Act fails because, "[a]s explained in [Section I.B. of Defendants' memorandum], each action taken by Defendants against Ms. Robinson was the result of her long history of poor performance, and her refusal to correct or even acknowledge her performance deficiencies."  (Defs.' Mem. 19.)  The court considers this assertion, along with the accompanying arguments and citations to the record, an adequate challenge to Robinson's allegation that she was discharged because of her refusal to participate in illegal activities.  As explained above, once a defendant has adequately challenged the elements of a plaintiff's claim, it becomes the plaintiff's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial."  *Crawford*, 2011 WL 2906157, at *4.  If Robinson fails to make this showing regarding "an element essential to [her] case, and on which [she] will bear the burden of proof at trial," the court is required to grant summary judgment in favor of Defendants.  *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 743 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Rather than identify any facts in the record demonstrating that she was discharged because of her refusal

to participate in illegal activities, Robinson instead attacks Defendants' assertion that Robinson was discharged because of poor performance.  This approach does not satisfy Robinson's burden at this point in the litigation.  Because Robinson has failed to identify any facts supporting an essential element of her claim, including any details about when, where, or how she refused to "cover things up," who at Morgan Stanley knew about this refusal, and the connection between Robinson's refusal and her ultimate termination, the court grants Defendants' motion for summary judgment on Count 2.

3.    <u>Illinois Personnel Record Review Act</u> (Count 6)

Section 4 of the Illinois Personnel Record Review Act ("PRRA") prohibits employers from using "personnel record information which was not included in the personnel record but should have been as required by [the PRRA] . . . in a judicial or quasi-judicial proceeding."  820 ILCS 40/4.  Robinson has alleged that Morgan Stanley, DFS, Kerry Piercy, Vesela Zlateva, David Sutter, and Karen Dollmeyer violated this statute by "knowingly and intentionally . . . using documents intentionally not included in the Plaintiff's personnel file, many that the Plaintiff had never seen, as evidence in a judicial proceeding, case 2005-SOX00044 hearing under the Office of Administrative Law Judges of the United States Department of Labor."  (1st Am. Compl. ¶ 200.)  Robinson also alleges that these same defendants violated Section 9 of the PRRA, titled "Record of nonemployment activities," by "soliciting information about the Plaintiff's association and conversations outside of work."  (*Id.* ¶ 202.)

Defendants argue that Robinson's claim fails as a matter of law, because she did not file a complaint with the Department of Labor before bringing her cause of action under the PRRA. This argument is based on Section 12, which outlines an employee's right to "file a complaint

with the Department of Labor." 820 ILCS 40/12(b). Once an employee has filed a complaint

with the Department of Labor, the Department of Labor is instructed to "investigate the

complaint" and to "attempt to resolve the complaint by conference, conciliation, or persuasion."

820 ILCS 40/12(b). Section 12 further states,

> (c)    If an employer violates this Act, an employee may commence an action in the circuit court to enforce the provisions of this Act, including actions to compel compliance, where efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed and the Department has not commenced an action in circuit court to redress such violation. . . .

820 ILCS 40/12(c). For the reasons set forth in *Anderson v. Board of Education of City of*

*Chicago*, this court interprets the plain language of Section 12 to mean that "attempted resolution

through the Department of Labor [is] a prerequisite to filing a claim in court." *Anderson v. Bd.*

*of Educ. of City of Chi.*, 169 F. Supp. 2d 864, 868-70 (N.D. Ill. 2001) (Gettleman, J.); *see also*

*Hefley v. Davis*, No. 08 C 172, 2008 WL 5114647, at *3 (N.D. Ill. Dec. 2, 2008) (Coar, J.);

*Wiess v. Vill. of Brooklyn*, No. 07-cv-473-JPG, 2008 WL 4200610, at *6 (S.D. Ill. Sept. 9, 2008)

(Gilbert, J.).

It is undisputed that Robinson did not, in fact, file a complaint with the Department of

Labor, as evidenced by Robinson's deposition testimony:

> Q:    At any time did you ever file a complaint with the Department of Labor about any of your Personnel Record Act claims?
>
> A:    I spoke to the Department of Labor several times, yes.
>
> Q:    Okay. Did you file a complaint with the Department of Labor?
>
> A:    I spoke to the Department of Labor about it several times.
>
> Q:    Did you ever give the Department of Labor anything in writing?

A:     No.

Q:     Did you ever fill out—

A:     I don't believe so.

Q:     Sorry.  Have you finished your answer?

A:     No, I don't believe so.

Q:     Okay.  Did you ever fill out any kind of complaint form?

A:     No, I don't believe so.

(Robinson's Dep. 47:16-48:10; *see also* Defs.' SMF ¶ 130.)  Robinson argues in her response

brief that she tried to file a complaint with the Illinois Department of Labor "several times, but

was told each time that they only take complaints from current employees and people who have

been separated from a company for less than one year."  (Robinson's Am. Resp. ¶ 82.)  In

support of this assertion, Robinson cites to what appear to be written instructions from the

Department of Labor stating that, "Complaints may be filed by a current employee or a former

employee that has been separated from the company for no more than twelve (12) months."

(Robinson's Ex. 8 ¶ 7[9]; *see also* Robinson's Am. Add'l Facts ¶ 25.)  Robinson argues that her

failure to file a complaint with the Department of Labor should be excused on the grounds that

"exhaustion of any administrative remedies would be futile."  (Robinson's Am. Resp. ¶¶ 84-85

(citing *Nauman v. Abbott Labs.*, No. 04 C 7199, 2005 WL 1139480, ay *2 (N.D. Ill. Apr. 27,

_____

[9] For purposes of the pending motion, the court assumes that Robinson's Exhibit 8 "[can]
be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The
court recognizes, however, that as it now stands Robinson's Exhibit 8 constitutes inadmissible
hearsay evidence.  The court further notes that Robinson has not cited any deposition testimony,
declaration, or affidavit supporting her assertions as to the content of her discussions with
representatives from the Department of Labor.

2005) (Gettleman, J.)).)

Neither of the parties has addressed the merits of Robinson's PRRA claim, and the court is in the dark as to the specific time frame of Defendants' allegedly illegal use of documents during the SOX hearing.[10]  Likewise, neither party addresses when Defendants are alleged to have solicited inappropriate information about Robinson's associations outside of work.  There is also no evidence before the court regarding the timing or content of Robinson's "several" discussions with the Illinois Department of Labor addressing the filing of a potential complaint. It is ultimately Robinson's burden to prove "that the administrative procedures definitely would not work."  *Roche v. V.J. Mattson Co.*, No. 93 C 4044, 1996 WL 432398, at *4 (N.D. Ill. July 29, 1996) (Lindberg, J.) (discussing exhaustion requirement in ERISA context).  Without these essential facts regarding timing and the substance of the Department of Labor's response to Robinson's inquiries, it would be impossible for a reasonable fact-finder to conclude from the facts in the record that the Department of Labor would have refused to accept any PRRA complaint filed by Robinson.  *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) ("our favor toward the nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation or conjecture'") (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)).  Because Robinson has failed to establish a genuine dispute of material fact on this point, summary judgment is granted in favor of Defendants on Count 6.[11]

---

[10] The SOX hearing took place on August 9-12, 2005, August 17-19, 2005, September 12, 2005, September 13, 2005, and September 15, 2005.  (ALJ's Decision 2.)  It is therefore equally possible that Defendants could have violated the PRRA within or outside the one-year deadline as measured from Robinson's termination.

[11] Robinson also asks the court to "consider" the fact that "any violation of the [PRRA] constitutes a criminal act of a petty offense."  (Robinson's Am. Resp. ¶ 86.)  It is not clear to the

4.     <u>FMLA</u> (Count 7)

The Family and Medical Leave Act ("FMLA") provides that eligible employees with serious health conditions are entitled to take "12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1)(D). An employee on FMLA leave is also entitled to "the right to be restored to the same or an equivalent position that she had before she took qualifying leave." *Goelzer v. Wheboygan County, Wisc.*, 604 F.3d 987, 992 (7th Cir. 2010) (citing 29 U.S.C. § 2614(a)(1)-(2)). Employers may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]," 29 U.S.C. § 2615(a)(2), meaning that employees also have "a cause of action for retaliation" under the FMLA. *Goelzer*, 604 F.3d at 992. "To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* at 995 (citations and internal quotations omitted).

Robinson has alleged that she took approved FMLA leave from November 29, 2001 through January 25, 2002, and that, upon her return to work, defendants Morgan Stanley, DFS, David Sutter, Bernice Jee, Kerry Piercy, Karen Dollmeyer, and Carole Hoffman "knowingly and willfully violated [her] FMLA rights when they informed her she was being demoted, getting a bad review, and not getting a raise." (1st Am. Compl. ¶¶ 24-25, 204-205.) Robinson also alleges that she was unlawfully put on a corrective action plan by the named defendants on February 20, 2002, after she had suffered a relapse and "was put on half days by her doctor."

---

court how this is relevant to the exhaustion issue. In any event, because Robinson's case is civil in nature, the court declines Robinson's invitation.

(*Id.* ¶¶ 26-27, 206.)  Finally, Robinson alleges that the named defendants thereafter unlawfully "[used] their actions in the original [FMLA] violations up to and including terminating [Robinson's] employment with the Defendants."  (*Id.* ¶ 209-210.)[12]

The statute of limitations for willful violations of the FMLA is three years.  29 U.S.C. § 2617(c)(2).  As set forth above, Robinson was demoted in January 2002 and was put on a corrective action plan on February 20, 2002.  In "early spring of 2003," Robinson was explicitly told by an employee from Human Resources that she had been "demoted because [she] went off on FMLA."  (Robinson's Dep. 30:9-21; *see also* Defs.' SMF ¶ 46.)  Robinson did not file her Complaint in this case until August 24, 2006, more than four years after her January 2002 demotion and February 20, 2002 corrective action plan, and more than three years after she was explicitly informed that there was a connection between these events and her FMLA leave.  Robinson's FMLA claim is therefore time-barred to the extent Robinson seeks relief for these discrete acts.  *See Tinner v. United Uns. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002) (Title VII) ("if the employee knew, or with the exercise of reasonable diligence should have known, that each act, once completed, was discriminatory, the employee must sue upon that act within the relevant statutory period.").

Robinson further alleges that the named defendants relied on these "original" FMLA violations when they terminated her employment in August 2004, and used "the results of their

---

[12] Tto the extent Robinson argues in her response that the named defendants also "retaliated against [Robinson] for complaining about the FMLA violations in her Memo in February 2004 and for knowing [Robinson] planned to file a complaint with the DOL in 2004" (Robinson's Am. Resp. ¶ 72), the court finds these arguments to be waived insofar as they are under-developed, unsupported by any citation to the record, and not set forth in Robinson's First Amended Complaint.

violations of the Return to Work requirements to support putting [Robinson] on later action plans, using the first to attempt to show a pattern."  (1st Am. Compl. ¶¶ 209-210.)  The court is not persuaded that the named defendants' later reliance on the results of the February 20, 2002 corrective action plan constitutes a fresh act of FMLA retaliation.  Nor do the named defendants' later actions constitute a "continuing violation" of the FMLA.  (Robinson's Am. Resp. ¶ 70.)  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Tinner*, 308 F.3d at 708 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  In this context, "a continuing adverse consequence of prior unlawful conduct" does not, by itself, establish a new cause of action.  *Diliberti v. United States*, 817 F.2d 1259, 1264 (7th Cir. 1987) (Privacy Act).  To the extent Robinson believed that the February 20, 2002 corrective action plan constituted willful discrimination under the FMLA, Robinson had three years in which to file a lawsuit.  She did not do so.  Accordingly, Robinson is now barred from seeking relief for the continued adverse consequences of this initial FMLA violation.

Robinson argues that equitable estoppel should toll the statute of limitations in this case, because "Defendants deceived [Robinson] into relying on their claims they would appropriately deal with the FMLA violations" and it was "[n]ot until the Investigation 'close-out' meeting in May [2004]" that Robinson knew "the Defendants were not going to do as they had said." (Robinson's Am. Resp. ¶¶ 71-72.)  Equitable estoppel applies when a defendant "prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint that will withstand dismissal."  *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010).  On the other hand, "if the defendant's behavior, whenever begun and however ill intentioned, fails to prevent the plaintiff from learning that he has a claim in time to sue,"

equitable estoppel is not appropriate. *Id.* Robinson knew about her potential FMLA claims in early 2004, but chose to address them through her February 2004 Memo rather than by filing a lawsuit. When Robinson discovered in May 2004 that this attempt at informal resolution of her FMLA claims had failed, Robinson still waited more than two years to file a complaint in court. Robinson does not contend that Defendants agreed to waive the statute of limitations, or that they otherwise discussed this issue with her at any time. The doctrine of equitable estoppel does not apply under these circumstances.

Because Robinson's FMLA claim is time-barred, summary judgment is granted in favor of Defendants on Count 7.

CONCLUSION

For the reasons set forth above, "Defendants' Motion for Summary Judgment Against Plaintiff Beverly Robinson" (Dkt. No. 217) is granted in its entirety and judgment is entered in favor of Defendants on Robinson's remaining claims, which are Counts 1, 2, 6, and 7. This civil case is terminated.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   August 31, 2011